1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**
9               **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  In re: | MDL NO. 1751 |
| 12  JAMSTER MARKETING LITIGATION, | Master File: 05cv-0819 JM(CAB) |
| 13  This document relates to all cases. | ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS; |
| 14 | GRANTING IN PART AND DENYING IN PART PLAINTIFFS' |
| 15 | MOTION TO ENJOIN AT&T FROM PROSECUTING <u>MCFERREN</u> |
| 16 | ACTION; DENYING AT&T'S MOTION TO STAY THIS ACTION |
| 17 | |

18
19          Plaintiffs move (1) to enjoin Defendants Cingular Wireless, LLC, also known as AT&T
20  Wireless Services, Inc., New Cingular Wireless Services, and AT&T Mobility (collectively "AT&T")
21  from consummating or otherwise moving forward with the proposed settlement in <u>Tracie McFerren</u>
22  <u>v. AT&T Mobility, LLC</u>, Civil No. 2008EV004400F (the "Georgia Action" or "<u>McFerren</u>"), an action
23  pending in Fulton County, Georgia state court and (2) to impose sanctions on AT&T on the ground
24  that it failed to disclose related or tag-along actions.   Defendants VeriSign, Inc. and Jamster LLC
25  oppose Plaintiffs' motion to stay.  AT&T opposes the motions and separately moves to stay all pretrial
26  proceedings in this MDL proceeding as they relate to AT&T.  Plaintiffs oppose AT&T's motion to
27  stay.  Having carefully considered the record, pertinent legal authorities, the arguments of counsel,
28  and for the reasons set forth below, the court denies Plaintiffs' motion for sanctions, grants in part and

1  denies in part Plaintiffs' motion to enjoin AT&T from prosecuting the McFerren action, and denies

2  AT&T's motion to stay.

3  **BACKGROUND**

4     On March 8, 2005 Plaintiff Charles Ford filed an action entitled Charles Ford, et al. v.

5  VeriSign, Inc., et al., in the Superior Court of San Diego County seeking to represent a class of

6  individuals who had been charged for unauthorized mobile content on their mobile telephone bills

7  arising from allegedly deceptive marketing practices.  (Compl., Docket No. 1).  In addition to the

8  AT&T defendants, the putative class action also named as defendants VeriSign Inc. ("VeriSign,"),

9  Jamster International SARL ("Jamster") and T-Mobile USA, Inc. ("T-Mobile").  Jamster and VeriSign

10  are in the business of selling mobile content.  On April 18, 2005 Defendants filed a Notice of Removal

11  alleging that the court had original jurisdiction under the Class Action Fairness Act ("CAFA"), 28

12  U.S.C. §1332(d).

13     After the commencement of the Ford action, five other complaints were filed that are now

14  pending before this court as part of the MDL proceeding (as of June 1, 2008):

15     • Cervantes v. Pacific Bell Wireless, LLC, No. 05cv146, filed on July 22, 2005 in the

16        Southern District of California;

17     • Herrington, et al. v. VeriSign, Inc., et al., No, 05cv1915, filed on October 7, 2005 in

18        the Southern District of California;

19     • Page v. VeriSign Inc., et al., No. 05cv1629, filed on October 26, 2005 in Pulaski

20        County Circuit Court in Arkansas and transferred to this court by Judicial Panel on

21        Multidistrict Litigation; and

22     • Harmon v. VeriSign, Inc., et al., No. 06 C0926, filed on January 16, 2006 in Cook

23        County Circuit Court in Illinois and transferred to this court by the Judicial Panel on

24        Multidistrict Litigation.

25     • Steffan v. VeriSign Inc., et al., No. 08cv0579, filed on March 27, 2008 in the Southern

26        District of California.

27  AT&T is named as a defendant in the Ford, Cervantes, and Steffan actions.  AT&T represents that the

28  proposed class-wide settlement in the McFerren action encompasses the class of plaintiffs in the three

1  actions pending against them in the present MDL action.  (AT&T Oppo. at p.3:3-6).

2  　　　After removal of the actions, AT&T and T-Mobile moved to compel arbitration pursuant to

3  the arbitration provision included in customer service agreements.  The court denied the motions to

4  compel arbitration on the ground that the class action waiver contained in the arbitration provisions

5  was unconscionable, thereby causing the entire arbitration agreement to be unenforceable.  On March

6  8, 2006 the court granted Defendants' motion to stay pending resolution of the appeal from this court's

7  denial of the motion to compel arbitration.  Ultimately, the Ninth Circuit denied Defendants' appeal

8  and T-Mobile filed a petition for certiorari before the Supreme Court.  On May 26, 2008 the Supreme

9  Court denied the petition for certiorari.

10  　　　At the time of the May 30, 2008 status conference, this court authorized the parties to proceed

11  with the litigation by filing a coordinated complaint and set a briefing schedule on the anticipated

12  motions to dismiss.  A hearing on the motions to dismiss is calendared for November 6, 2008.

13  The MDL Proceeding

14  　　　On January 16, 2006, Plaintiff's counsel in Ford filed a motion before the Judicial Panel on

15  Multidistrict Litigation, requesting all related cases be centralized before this court.  AT&T and T-

16  Mobile initially opposed Multidistrict Litigation ("MDL") but subsequently withdrew their opposition.

17  On April 14, 2006 the MDL Panel transferred Page to this court and assigned the MDL Docket No.

18  1751.  Pursuant to J.P.M.D.L. Rules of Procedure, and this court's Pretrial Order, the parties were

19  required to promptly advise the court of any potential tag-along action.  Only two tag -along actions

20  have been identified: Harmon v. VeriSign, Inc., et al., No. 06 C0926 (S.D. No. 06cv1380), originally

21  filed in the Northern District of Illinois and Edwards v. VeriSign, Inc., No. 06-61234 (S.D. No.

22  06cv2277), originally filed in the Southern District of Florida but subsequently voluntarily dismissed

23  by plaintiff Edwards.

24  The Georgia Action

25  　　　On April 1, 2008 plaintiff McFerren commenced the Georgia Action naming AT&T Mobility,

26  LLC as the sole defendant.  The McFerren complaint defines the putative class as "all AT&T wireless

27  telephone subscribers in the nation who suffered losses or damages as a result of AT&T billing for

28  mobile content products and services not authorized by the subscriber." (Ricket Decl., Exh. G at 192-

93).

The docket in <u>McFerren</u> reflects little activity.  No answer has yet been filed nor any other pleading or motion.  However, on May 30, 2008 counsel for AT&T, the same counsel that represents AT&T and VeriSign in this action, and McFerren's counsel, presented a proposed settlement to the Fulton County court for preliminary approval.  The class period in <u>McFerren</u> is defined as the period from January 1, 2004 to the date of notice of settlement (the class period in <u>Ford</u> extends back to March 2001).[1]

The settlement generally provides the class with refunds equal to the amount of all unauthorized third-party mobile content damages.  (Ricket Decl. Exh. F).  Class members must identify and provide a certification of the date of the charges, description of the charge, and the amount of each third party mobile content charge.  <u>Id.</u>  Further, AT&T agreed to take other steps to inform its customers about mobile content and the use of parental controls to limit access to mobile content.  The settlement also encompasses 15 additional cases commenced between 2007 and 2008 that name AT&T as a defendant.  <u>Id.</u>  AT&T has not provided notice to the court of the existence of these potentially tag-along or related cases.  Further, the settlement also provides for the payment of $4.3 million in attorney's fees.

The <u>McFerren</u> class counsel have, since January 2006 filed a total of 15 additional actions that joined in support of the Georgia settlement.  Defendants in those cases were "AT&T Mobility, every major U.S. aggregator, and several third party content provides."  (Special Appearance Oppo. at p.2:25-26).

**DISCUSSION**

**Plaintiffs' Motion for Sanctions**

Plaintiffs move for sanctions against AT&T on the ground that its failure to notify this court of the <u>McFerren</u> litigation violated both JPML Rule 7.4(e) and Southern District of California Civil

---

[1] On August 4, 2008 the court entered an order requested further briefing and evidentiary support related to AT&T's representation that no purported plaintiff "would predate January 1, 2004 in terms of having a [mobile content] transaction." (R.T. 27:18-20).  In response, AT&T submitted substantial evidence in support of this representation.  Plaintiffs responded, in essence, that discovery has yet to commence in this case and therefore this representation can neither be rebutted nor confirmed.  (Docket No. 253).

Local Rule 40.1.  The Local Rule provides that "[w]henever counsel has reason to believe that a pending action or proceeding on file or about to be filed is related to another pending action or proceeding on file in this or any other federal or state court )whether pending, dismissed or otherwise terminated), counsel shall promptly file and serve on all known parties to each related action or proceeding a notice of related case . . ."  L.R. 40.1(e).  The criteria for determining whether an action is related is set forth in L.R. 40.1(d).  An action is deemed related where the actions appear:

> (1) to arise from the same or substantially identical transactions, happenings, or events; or (2) involve the same or substantially the same parties or property, or (3) involve the same patent or the same trademark, except where in one or both of the actions concerned, the same patent or trademark is joined with other patents or trademarks which do not cover the same or substantially identical things or devices; or (4) call for determination of the same or substantially identical questions of law; or (5) where a case is refiled within one year of having previously been terminated by the Court; or (6) for other reasons would entail substantial duplication of labor if heard by different judges.

L.R. 40.1(d).  Whether a potential tag-along action is a related action is to be determined "in accordance with local rules for the assignment of related actions."  JPML 7.5(a).

As a threshold matter, the parties are in general agreement that the MDL action and the McFerren action, as presently pled, are virtually the same action given that the present focus in both actions is the core allegation that class members were improperly billed for third party content.  The recently filed (July 1, 2008) Coordinated Class Acton Complaint ("CCAC") clearly seeks to represent a class of individuals who were "charged and paid for unauthorized products or services by Wireless Providers."  (CCAC ¶¶67, 68).  The CCAC also makes clear that the unauthorized charges arise from third party mobile content.  (CCAC ¶¶80-130).  The McFerren settlement, as preliminarily approved on May 30, 2008 by the Fulton County Superior Court, provides relief to class members who were improperly "billed for third party mobile content."  (Plaint. Exh. Y at 556).

When commenced, however, the central class-wide allegation in the Ford action centered on a class of individuals "who responded to VeriSign's advertisements" and were subsequently billed for text messages.  (Ford Compl. ¶ 22).  The class allegations in the Cervantes action centered on third party providers who sponsored "advertisements run on cable television channels targeting children and young adults."  (Cervantes Compl. ¶¶25-26).  Similarly, the Steffan action centered on "advertisement[s] offering a free mobile content product or service."  (Steffan Compl. ¶12).  As seen

1   from a review of the original complaints in <u>Ford</u>, <u>Cervantes</u>, and <u>Steffan</u> the predominate focus of the

2   complaints is the false advertising for mobile content which resulted in the improper billing for such

3   mobile content.

4        The <u>McFerren</u> related cases originally comprised two distinct theories of liability.  In <u>Jiran</u>,

5   class members consist of individuals who were charged for mobile content "where the date of

6   authorization for such charges preceded the date that the telephone number was assigned by AT&T

7   to such subscriber." (Plaint. Exh. O at 388, ¶93(A).  These allegedly unauthorized charges arise from

8   AT&T's failure to remove services and charges to recycled mobile telephone numbers.  (<u>Id.</u> at ¶¶1-2).

9   The <u>Fiddler</u> and <u>Dedek</u> complaints identify a class consisting of AT&T subscribers "who suffered

10  losses or damages as a result of AT&T billing for mobile content products and services not authorized

11  by the subscriber." (<u>Fiddler</u> Compl.  ¶43(A), Plaint. Exh. Q at 437).  The alleged wrongful conduct

12  arises from mobile content aggregators, like m-Qube, instructing AT&T to charge subscribers for

13  mobile content that was never requested by the subscriber.  (<u>Id.</u> at ¶¶14-33).  The <u>McFerren</u> related

14  cases do not allege injuries caused by false advertising content.  (Danos Decl. Exh. 4).  Rather, the

15  focus centers on allegations that AT&T possessed insufficient internal controls to prevent

16  unauthorized billing practices by mobile content providers and aggregators.  (<u>Id.</u> ¶¶ 5-22).

17       After careful consideration of the complaints filed in the <u>McFerren</u> and <u>Ford</u> actions, the court

18  concludes that the actions, as originally filed, are not sufficiently related to the degree required for the

19  imposition of sanctions against AT&T.  There is no precise acid test for determining the "relatedness"

20  of two actions.  On the one hand, the MDL and <u>McFerren</u> actions both arise from alleged acts of

21  improper billing.  However the genesis of the claims is fundamentally different for the <u>McFerren</u> and

22  MDL actions.  The focus of the MDL claims, as they relate to AT&T, is that class members were

23  misled through false advertising.  The focus of <u>McFerren</u> , in contrast, is that AT&T did not require

24  adequate proof of customer authorization prior to billing for third party mobile content.

25       While the court concludes that there is a good faith argument that the <u>McFerren</u> and MDL

26  actions were not sufficiently related at the time of their respective filings, the character of the

27  <u>McFerren</u> action changed over time.  By May 30, 2008, the date of the preliminary approval hearing

28  before Judge Bonner of the Fulton County Superior Court, the actions encompassed substantially

1    similar and related transactions and occurrences.  At some point in time prior to May 30, 2008 there

2    is no doubt that AT&T knew full well that the <u>McFerren</u> and MDL actions had morphed beyond the

3    original scope of the complaints and merged into substantially similar actions.  Precisely when that

4    transition occurred is not determinable from the record before the court.  Neither at the time of oral

5    argument, nor in the declarations submitted in relation to this motion, does AT&T inform the court

6    when it envisioned using the <u>McFerren</u> action as a vehicle to globally settle all claims broadly related

7    to allegations of improper billing for mobile content.

8         At the time of oral argument, Mr. Balser, counsel for AT&T, was asked if he ever "saw this

9    case - - that is, the Georgia case - - - as a potential tag-along case until the ultimate settlement in this

10   case was tentatively reached."  (RT at p.8:18-20.  Mr. Balser responded that he was not retained until

11   the end of the settlement process (sometime in May 2008)[2] and that the declaration of Mr. Duffy

12   provided an analysis on the relatedness of the actions.  (RT at p.9:8-9, "that analysis is set forth [] in

13   Mr. Duffy's affidavit").  The declaration of Mr. Duffy, however, while providing an analysis of the

14   relatedness of the actions at the time of filing, is silent on the time frame when AT&T sought to pursue

15   the litigation strategy of using the <u>McFerren</u> action as a vehicle to resolve all related litigation.  (Duffy

16   Decl.).  Presumably, counsel for AT&T first learned at the mediation sessions conducted in May of

17   the viability of its legitimate litigation strategy of folding in related actions to achieve a global

18   settlement.   As AT&T moved to inform this court of the status of the <u>McFerren</u> action within days,

19   or a few weeks at most (the record is not fully developed on this point), of learning of the viability of

20   its settlement proposal, there is no basis to impose sanctions on AT&T.  Accordingly, the court

21   concludes that the imposition of sanctions is not warranted under the circumstances.

22        In sum, the motion for sanctions is denied.

23   **Legal Standards, The Motions to Stay**

24        The All Writs Act provides that: "The Supreme Court and all courts established by Act of

25   Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

26   agreeable to the usages and principles of law."  28 U.S.C. §1651(a).  This broad grant of authority is

27   _____

28        [2] AT&T has not provided clear and concise information of the dates of the mediation.  Mr. Duffy, counsel for AT&T declares that the mediation occurred over a two day period "during May, 2008."  (Duffy Decl. ¶21).

1   tempered by the Anti-Injunction Act which provides that "[a] court of the Untied states may not grant

2   an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress,

3   or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C.

4   §2283.  Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court

5   proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion

6   to finally determine the controversy." Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,

7   398 U.S. 281, 297 (1970).  In exercising its authority under the All Writs Act, the Supreme Court

8   emphasized that such authority is necessary only if "some federal injunctive relief may be necessary

9   to prevent a state court from so interfering with a federal court's consideration or disposition of a case

10  as to seriously impair the federal court's flexibility and authority to decide that case." Id. at 295.

11      The All Writs Act has had particular application in the context of MDL proceedings.  "[W]here

12  complex [MDL] cases are sufficiently developed, mere exercise of parallel jurisdiction by the state

13  court may present enough of a threat to the jurisdiction of the federal court to justify issuance of an

14  injunction." In re Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 225 (3rd Cir. 2002).  Where the Anti-

15  Injunction Act applies, "the injunction should be directed at a litigant . . . instead of the state court

16  proceedings itself."  California v. Randtron, 284 F.3d 969, 975 (9th Cir. 2002).

17  **The Motions to Stay**

18      Scope of the MDL Proceeding

19      One threshold issue not fully flushed out by the parties concerns the scope of this court's

20  jurisdiction as it relates to the MDL litigation.  The MDL panel concluded that the MDL actions

21  involve common factual allegations that:

22          (I) VeriSign and Jamster defendants have falsely represented to consumers that mobile
            customers can get a free ring tone or other phone service by sending a message to
23          Jamster or by registering on the internet; and ii) instead of receiving the free content,
            those customers then received repeated text messages from defendants for which they
24          were charged by defendants.

25  (Hartman Decl., Exh. A).  These core common factual allegations, properly characterized as deceptive

26  marketing practices, form the basis for the MDL's transfer and instructions to this court to preside

27  over coordinated or consolidated pretrial proceedings.

28      As presently pled in the CCAC, the nationwide class now consists of "[a]ll persons who were

charged [and] paid for unauthorized products or services by a Wireless Provider during" the class period.  CCAC ¶ 67.  This a sweeping expansion of the scope of the MDL mandate.  As presently defined, virtually all claims that are capable of being characterized as "wrongful billing claims" would now potentially be folded into the MDL proceeding.  Claims arising from conduct unrelated to deceptive marketing practices would significantly alter the course of this MDL proceeding.  Claims involving "unscrubbed numbers," fees for "free" upgrades, inadequate internal controls,  accounting irregularities, deceptive billing practices, and the like would form a part of this MDL proceeding.  Virtually any state or federal claim that could loosely be characterized as a wrongful billing claim could be identified as a potential tag along action.  Among other things, such a broad view of the scope of the MDL action, raises comity and federalism concerns and would exceed the scope of this court's MDL jurisdiction.  <u>See</u> Manual for Complex Litigation, Fourth, §§22.36 - 22.4.  This court's authority to interfere with on-going state court proceedings is limited and not all encompassing.  <u>See</u> <u>Atl. Coast Line</u>, 395 U.S. at 295.

For the reasons set forth below, and after careful review of these issues and the scope of the JPML's instructions as to the limits placed on the exercise of this court's jurisdiction, the court finds that claims unrelated to the deceptive marketing claims do not share the common facts or issues of the core cases comprising the MDL litigation. The primary purpose of MDL proceedings is to provide efficiencies in coordinated pretrial discovery and other pretrial matters - not to use the MDL proceedings as a means to expand the scope of the litigation beyond the core issues identified by JPML.

<u>Plaintiffs' Motion to Stay</u>

Plaintiffs argue that AT&T must be enjoined from pursuing the settlement in the <u>McFerren</u> action as a necessary aid to this court's jurisdiction.  Unless AT&T is enjoined, Plaintiffs conclude, this court's jurisdiction will be wrongfully usurped.  "[W]here jurisdiction over federal MDL class action litigation is threatened by a potential settlement of the same claims in a state court, the federal court can act pursuant to the All Writs Act even when the federal court has not already entered an order that requires preservation." <u>In re Lease Oil Antitrust Litigation No. II</u>, 48 F.Supp.2d 699, 705 (S.D. Tex. 1998).  Any litigant may be enjoined from proceeding with a state court action where it is

1  "necessary to prevent a state court from so interfering with a federal court's consideration or

2  disposition of a case as to seriously impair the federal court's flexibility and authority to decide the

3  case." In re Diet Drugs Prod. Liab. Litig., 282 F.3d 220, 234 (3d Cir. 2002); Keith v. Volpe, 118 F.3d

4  1386, 1390 (9th Cir. 1997) (federal courts have authority to enjoin "state proceedings that interfere,

5  derogate, or conflict with federal judgments, orders, or settlements").

6       The court concludes that a partial stay of the McFerren action as it relates to the core MDL

7  deceptive marketing claims is required to preserve the integrity, efficiency and fairness of the MDL

8  related actions.  Moreover, implementation of a stay will foster the proper administration of justice

9  and permit Plaintiffs to obtain complete relief on the core MDL claims to which they may be entitled.

10  In In re America Online Spin-Off Accounts Litig., 2005 WL 5747463 (C.D. Cal. 2005), 12 class

11  actions where transferred to the Central District by the MDL Panel for pre-trial proceedings.  One

12  central allegation was that America Online, through the use of deceptive pop-up ads, allegedly opened

13  spin-off accounts without the permission of the account holders.  The plaintiffs in America Online had

14  initiated settlement discussions with America Online when the plaintiffs sought injunctive relief under

15  the All Writs Act to enjoin America Online from proceeding with a settlement of plaintiffs' claims

16  in Illinois state court.  The district court concluded that a settlement in the Illinois action would

17  diminish the court's "ability to bring the MDL litigation to a natural conclusion," and therefore

18  enjoined America Online from proceeding with the state court settlement. Id. at *4.  The court further

19  noted that America Online was under a duty to inform the court of the Illinois tag-along action and

20  concluded that "the underlying policy behind MDL litigation, coupled with a threat to the Court's

21  jurisdiction over the MDL plaintiffs, weighs in favor of granting Plaintiffs motion for injunctive

22  relief." Id.

23       Here, AT&T is one of the central figures in the alleged deceptive marketing scheme.  The

24  dismissal of AT&T as a party, and potentially Jamster and VeriSign as well (as urged by AT&T,

25  Jamster, and VeriSign), will severely hinder this court's ability to efficiently and effectively bring the

26  MDL litigation to a conclusion.  See Id.  In the context of complex litigation, the All Writs Act plays

27  an important role:

28       [W]e did recognize in In re Diet Drugs that complex class action cases are one
         "category of federal cases for which state court actions present a special threat to the

jurisdiction of the federal court."  As we explained, [u]nder an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction."  This is so because "maintaining 'the federal court's flexibility and authority to decide' such complex nationwide cases makes special demands on the court that may justify an injunction otherwise prohibited by the Anti-Injunction Act." 500 F.3d at 300 n.3.  Accordingly, in cases such as this, a federal court has the discretion to enjoin parallel state actions which - - due to the risk of inconsistent decisions - - may undermine or eliminate the court's "authority" over a class action.

Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322 (3d Cir. 2007); In re Lease Oil Antitrust Litigation No. 11, 48 F.Supp.2d 699, 705 (S.D. Tex. 1998) ("[W]here jurisdiction over federal MDL class action litigation is threatened by a potential settlement of the same claims in a state court, the federal court can act pursuant to the All Writs Act even when the federal court has not already entered an order that requires preservation."); In re Diet Drugs Prods. Liab. Litig., 282 F.3d at 234 (three factors are considered in determining whether the state court action sufficiently interferes with the MDL proceedings to warrant entry of an injunction under All Writs Act: (1) a determination of what kinds of state court interference would sufficiently impair the federal proceeding; (2) the state court actions are to be assessed to determine whether they present a sufficient threat to the federal action; and (3) principles of federalism and comity are to be considered as the primary aim of the Anti-Injunction Act is to prevent needless friction between state and federal courts).

The proposed settlement in McFerren also appears inadequate to protect the rights of Plaintiffs and the class they seek to represent.  While AT&T represents that the contemplated settlement provides a "full refund," the court notes that the terms of the settlement place the burden on the putative class members to discovery any improperly billed mobile content.  In order to receive a refund, the class members must identify the transaction date, describe the charges, and set forth the amount of third party content to be refunded.  It is foreseeable that many class members have not maintained their telephone billing records over the multi-year class period.  The structure of the settlement appears designed to limit a consumer's incentive and ability to adequately assess their claims.  In In re Managed Care Litigation, 236 F.Supp.2d 1336 (S.D. Fl 2002), the district court presided over a MDL proceeding where the plaintiffs, consisting of a class of physicians, alleged RICO violations against managed care insurance companies.  One insurance carrier, Cigna, had engaged in settlement discussions in a parallel state court action.  In the state court action the plaintiffs

amended the complaint to create federal jurisdiction and, on Friday November 22, 2002 Cigna removed the action to federal court. Then, on Monday November 25, 2002 at 9:11 a.m. the parties filed a settlement agreement and motion requesting preliminary approval of the settlement and conditional certification of the settlement class. By 10:25 a.m. that same day, the state court approved the motion to preliminarily approve the settlement. The motion for preliminary approval did not advise the court of the existence of the MDL proceedings. The district court enjoined Cigna from proceeding with the proposed settlement noting that the settlement "might" be "woefully inadequate" and that the settlement would render the MDL panel's "decisions and existence moot." Id. at 1344. The court enjoined Cigna from proceeding with the settlement.

Here, as in In re Managed Care, the state and federal courts have not been well-served by the settling parties. On March 6, 2006 this court stayed the Ford action pending appeal of this court's order denying the motion to compel arbitration. The stay was imposed, in part, based upon AT&T's argument that it should not incur litigation costs pending appeal. (Docket No. 137). Then, after the Ninth Circuit affirmed this court's ruling denying the efforts of AT&T and others to compel arbitration, this court again, over the strenuous objections of class counsel, continued to stay the litigation to allow Defendants to seek Supreme Court review. Rather then forthrightly advising this court that AT&T was devising a "global settlement" in the McFerren litigation, defense counsel requested this court to maintain its stay on the premise of saving AT&T litigation costs in the event of a favorable ruling by the Supreme Court. While the present action was stayed, AT&T litigated the McFerren actions and, without informing this court or Plaintiffs, reached a purported global settlement of all claims. On May 30, 2008 AT&T filed a motion for preliminary approval of settlement in the McFerren action and several hours later the settlement had been preliminarily approved. At the hearing before Judge Bonner, Mr. Balser, counsel for AT&T, and Mr. Edelson, counsel for the McFerren plaintiffs, represented that the MDL action "involves really a subset of the issues in McFerren," (RT 6:15), and that "some of those actions (the MDL related actions) are directed only at the third party content providers." (RT 7:21-22). Judge Bonner "understood from the (statements of counsel) that the issues are not precisely the same, although, there may be some overlap in the multi-district case and that the parties in that case have been at least aware of this case." (RT 8:3-7).

1    The court highlights that counsel for AT&T represented before this court that the settlement in

2    McFerren would extinguish all of Plaintiffs' claims asserted against AT&T, (RT 15:24-25), and

3    possibly those of Jamster and VeriSign as well.  (RT 15:12 - 16:18).  From this portion of the record,

4    it does not appear that AT&T adequately corrected Judge Bonner's perception that, with respect to

5    AT&T, the issues in the two actions arise from substantially the same occurrences and transactions

6    and that the settlement in McFerren would significantly impact this court's flexibility and authority

7    to decide issues raised in the MDL related actions.

8           Finally, principles of federalism and comity are furthered by entry of an injunction narrowly

9    tailored to enjoin AT&T from proceeding with the McFerren settlement as it relates to the deceptive

10   marketing claims.  See In re Diet Drugs, 282 F.3d at 234.  Federal courts have long recognized that

11   principles of comity require federal district courts to exercise care to avoid interference with each

12   others's affairs.  See Sutter Corp. v. P & P Industries, Inc., 125 F.3d 914, 917 (5th Cir. 1997).  Here,

13   entry of a limited and narrowly crafted stay in the McFerren action as to the deceptive marketing

14   claims does not so much interfere with the Georgia action but, rather, prevents that action from

15   interfering with this federal proceeding consisting of MDL related actions that present complex issues

16   involving a substantial class of individuals from many different states.

17          Among other things, AT&T contends that this court's authority to issue the injunction is

18   limited to in rem proceedings, MDL proceedings with pending preliminarily approved settlement, or

19   proceedings involving collusive settlements.  These arguments are not persuasive.  While an in rem

20   action by its very nature may present more compelling reasons for entry of an injunction, entry of an

21   injunction also extends to complex in personam actions.  Negrete v. Allianz Life Ins. Co. of North

22   America, 523 F.3d 1091, 1102 (9th Cir. 2008).  In in personam actions "some federal injunctive relief

23   may be necessary to prevent a state court from so interfering with a federal court's consideration or

24   disposition of a case as to seriously impair the federal court's flexibility and authority to decide that

25   case."  Id. at 1101 (quoting Atl. Coast Line, 398 U.S. at 295).

26          While the mere existence of a parallel  state court action is insufficient to warrant injunctive

27   relief, here, the MDL action is sufficiently advanced and presents unique circumstances such that entry

28   of a limited injunction to enjoin AT&T from proceeding with the settlement of the deceptive

marketing claims is necessary to aid this court's jurisdiction. The parties have engaged in substantial motion practice centered on the validity of the arbitration provisions contained in customer agreements, filed several motions to dismiss, and filed several motions to stay (including the present ones). Further, the proposed settlement threatens to prevent Plaintiffs from recovering damages from either Jamster or VeriSign. These MDL defendants represent that, upon final approval of the McFerren settlement, they must be dismissed from the MDL action because they will obtain liability releases via the McFerren settlement as AT&T has made an indemnity demand against them. (R.T. at pp. 43:16 - 44: 11; (RT  15:12 - 16:18) . The court notes that neither Jamster nor VeriSign are parties to the McFerren action but are at the center of the deceptive marketing and advertising claims in the MDL related actions. The complexities surrounding the nature of the deceptive and false marketing claims present a unique challenge requiring a limited injunction to enjoin AT&T from proceeding with the settlement in the McFerren action only as it relates to the deceptive marketing claims asserted in the MDL action. Such a limited stay will likely have minimal impact on the state court to globally settle all other claims related to third party mobile content. AT&T is not enjoined from proceeding with any other claim in the Georgia Action.

In sum, the court denies Plaintiffs' motion for sanctions, grants in part and denies in part Plaintiffs' motion for a stay, and denies AT&T's motion for a stay as moot. AT&T is hereby enjoined in the McFerren action from proceeding to settle or otherwise litigate the deceptive marketing claims encompassed within the scope of this court's MDL jurisdiction. Finally, the court is mindful that the present order will likely impact the scope of the motions to dismiss and to compel arbitration presently set for hearing on November 6, 2008. In the event any party to this action requires additional time to address any issue raised by the present order (as it bears on the motions to dismiss), the court will entertain limited ex parte motions for an enlargement of time  to address such issues.

**IT IS SO ORDERED.**

DATED:  September 29, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties