# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JAMSTER MARKETING LITIGATION,<br><br>This document relates to all cases. | MDL NO. 1751<br><br>Master File: 05cv0819 JM(CAB)<br><br>ORDER DENYING MOTIONS TO STRIKE; GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; REQUIRING ANSWER TO COMPLAINT |

Defendants VeriSign, Inc. and Jamster LLC (collectively "Content Providers") move to dismiss the RICO cause of action alleged in the First Amended Coordinated Class Action Complaint ("FACC"). Defendant T-Mobile USA, Inc. ("T-Mobile") moves to dismiss the FACC in its entirety. Defendants AT&T Wireless Services Inc., New Cingular Wireless Services Inc., and Cingular Wireless LLC (collectively "AT&T") move to strike or, alternatively, to dismiss the FACC and to strike the class allegations and to compel arbitration.[1] Plaintiffs oppose all motions. All Defendants join in each other's motions. For the reasons set forth below, the court denies and defers ruling on the motions to strike until the class certification hearing date; grants Content Provider's motion to dismiss the RICO claim; grants in part and denies in part Wireless Providers' motions to dismiss; and requires all Defendants to file answers within 15 days of entry of this order. All granted motions are granted

---

[1] T-Mobile and AT&T are collectively referred to as "Wireless Providers."

1 without leave to amend.

2 **BACKGROUND**

3 <u>The Parties</u>

4 This MDL action is comprised of seven complaints, individually referred to as the <u>Ford</u>, <u>Cervantes</u>, <u>Herrington</u>, <u>Page</u>, <u>Harmon</u>, <u>Kling</u>, and <u>Steffan</u> complaints. Named Plaintiffs in the operative complaint are Charles Ford, Debra Szalanski, Carol Fox de Steffano, David Haslet, Gerald Shuck, Lloyd "Adam" Page, Eright Johnson, and Diane Cervantes.

8 Jamster, a business entity organized under the laws of Switzerland, with its principal place of business in Fribourg, Switzerland, is alleged to have been a wholly owned subsidiary of VeriSign, a corporation incorporated in the State of Delaware with its principal place of business in Mountain View, California, until January 3, 2007. (FACC ¶33). Since January 3, 2007 Jamster allegedly became a joint venture partner of VeriSign. <u>Id.</u> The Content Providers' products and services were first marketed in the United Kingdom before Jamster was launched in the Untied States. (FACC ¶30). "Prior to 2004, Content providers were aware of formal complaints to governmental agencies in the United Kingdom that Jamster advertisements did not provide clear information about pricing or that a subscription was being offered." (FACC ¶31). "Despite this knowledge, Content Providers used the same and similar advertisements when it began marketing mobile content under the name of Jamster in the United States." <u>Id.</u>

19 AT&T and T-Mobile are wireless service providers who, among other things, provide wireless phone service and text messaging. (FACC ¶43). Plaintiffs allege that Wireless Providers and Content Providers had a business relationship wherein Content Providers would provide ring tones and other content to customers of Wireless Providers. (FACC ¶45). In exchange, Wireless Providers would retain a portion of the charges for its services.

24 <u>The FACC's Substantive Allegations</u>

25 In its order of September 29, 2008 ("Order") the court clarified the scope of this MDL litigation as encompassing core common factual allegations related to deceptive marketing practices. (Order at 8:25-27). The FACC alleges that the minor children of Plaintiffs saw advertisements on television or the internet that offered a free ringtone by sending a text message. (FACC ¶¶81-95).

The minor children responded to the advertisements promoted by Jamster and VeriSign and thereafter they were charged for mobile content (i.e. ringtones, wallpaper, text messages, etc.) on the telephone bills issued by Wireless Providers.

Plaintiffs seek to represent a class of consumers who were wrongfully charged for mobile content by Content Providers and subsequently billed for those charges by Wireless Providers. (FACC ¶¶ 58-59). Plaintiffs allege that the Jamster and VeriSign advertisements used the word "free" and did not disclose any additional charges, including text messaging charges. A typical transaction involved the minor viewing an advertisement containing pictures of cell phones with flashing lights, rap music, voices, and sparkling effects. (FACC ¶73). The advertisement provided a number in large print that "shined and sparkled for consumers to text message in order to receive a ring tone." Id. The "only dominant and legible text in the advertisement was the number to text to receive the ring tone or wallpaper. Any other text that may have appeared in the advertisement was illegible during the television advertisement and in small print, hidden amongst the lights that were moving and flashing on the screen." (FACC ¶ 74).

The FACC also alleges the steps taken by various Plaintiffs to rectify the alleged wrongful charges received from Content Providers. For example, after Plaintiff Cervantes' 16 year old daughter responded to an advertisement for free ringtones Plaintiff began receiving charges for products and services that "Cervantes did not order or agree to have included on her account." (FACC ¶96). Cervantes called AT&T on March 10, 2005 and requested that all text messages, internet and downloading services be restricted. She was informed by an AT&T representative that the charges could not be blocked, (FACC ¶97), and that she should contact Jamster directly. She called Jamster in April 2005 and, after speaking with three different representatives over 45 minutes, she received a commitment from Jamster to credit her account. The credits never appeared on AT&T's billing statement. (FACC ¶99). On May 13, 2005 she telephonically contacted AT&T to dispute further content charges by m-Qube. (FACC ¶ 100). On June 22, 2005 Plaintiff Cervantes again contacted AT&T and received a further credit for content charges. She again requested that AT&T stop billing for content changes and she was informed that AT&T "did not know how to stop the charges." (FACC ¶101). The next month, July 2005, Plaintiff Cervantes received additional content charges and she

1  again spoke with an AT&T representative. Plaintiff was informed that she would have to call every
2  month to dispute the charges. Id.

3        Plaintiffs allege that Defendants share revenue from customers "for unauthorized and
4  undisclosed mobile content." (FACC ¶46). AT&T allegedly "knew about the fraudulent and
5  misleading nature of the Jamster advertising because," on January 31, 2005, a consumer wrote to
6  AT&T complaining that he had been wrongfully billed for Jamster charges. (FACC ¶121(a). While
7  this portion of the FACC alleges that Content Providers received numerous complaints from
8  consumers, state consumer protection agencies and Attorneys General regarding the allegedly
9  misleading nature of the advertisements, (FACC ¶¶121), this portion of the FACC does not allege that
10 T-Mobile ever received a consumer complaint.

11 The FACC's Claims

12       Based upon the above generally described conduct, Plaintiffs allege 11 claims for fraud and
13 deceit, negligent misrepresentation, violation of the Racketeer Influenced and Corrupt Organizations
14 Act ("RICO"), violations of the Federal Telecommunications Act ("FTA") and Truth-In-Billing Act
15 ("TIBA"), unjust enrichment, breach of contract, violations of California consumers Legal Remedies
16 Act ("CLRA"), violation of Cal. Pub. Util. Code Section 2890, false advertising in violation of Cal.
17 Bus & Prof §17500, unfair competition in violation of Cal. Bus & Prof §17200 et seq., and unfair
18 competition by contracting with minors in violation of Cal. Bus & Prof §17200 et seq.

19 Procedural History of the Coordinated Complaints

20       On March 8, 2006, the court stayed the present action pending appeal of this court's order
21 denying Wireless Providers motion to compel arbitration. (Docket No. 137). Plaintiffs filed the
22 CCAC on July 1, 2008 and, on December 9, 2008, the court granted in part and denied in part
23 Defendants' motions to dismiss and to strike the Coordinated Class Action Complaint ("CCAC"). The
24 court also granted leave to amend and Plaintiffs filed the FACC on January 8, 2009. The present
25 motions follow.

26 ///
27 ///
28 ///

## DISCUSSION

**1.  Defendants' Motions to Dismiss the RICO Claim**

   A.  Legal Standards

   **1.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, __550 U.S. __, 127 S.Ct. 1955 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, - -S.Ct. - -, 2009 WL 1361536 (May 18, 2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). The defect must appear on the face of the complaint itself.  Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 517 U.S. 1183 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

   **2.  The Particularity Requirements of Rule 9(b)**

Rule 9(b) requires that Plaintiffs plead with detail "the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). In the context of civil RICO where the predicate acts are based on mail and wire fraud, the policies underlying Rule 9(b) are "especially important in RICO

cases because of the harm to a person's reputation that allegations of 'racketeering' may do." <u>In re Crazy Eddie Secs. Litig.</u>, 714 F.Supp. 1285, 1292-93 (E.D.N.Y. 1989). The allegations of fraud must include the time, place, and specific content of the false representation. <u>See</u> <u>Miscellaneous Service Workers, Drivers & Helpers v. Philco-Ford Corp.</u>, 661 F.2d 776, 782 (9th Cir. 1981). Courts have also phrased the heightened pleading standard as requiring "the who, what, when, where, and how of the misconduct charged." <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

<u>B.  The RICO Claim</u>

To the extent pertinent to this case, the substantive sections of RICO provide as follows:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

18 U.S.C. §§1962(b), (c),(d).[2] A RICO enterprise is defined "to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

**1.  The Enterprise**

The issues raised by Defendants implicate the minimum requirements for an associated-in-fact enterprise. "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization formal or informal,' and 'evidence that the various associates function as a continuing unit.'" <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 552 (9th Cir. 2007) (<u>en banc</u>) (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981) (An associated-in-fact enterprise is one that (1) has a common purpose, (2) has an ongoing organization, and (3) consists of a continuing unit.).

As with the CCAC, the court concludes that the enterprise allegations are too vague and

---

[2] In the present case, the existence of a §1962(d) claim depends on a viable §1962(c) claim. <u>See</u> <u>Edwards v. First Nat. Bank</u>, 872 F.2d 347, 352 (10th Cir. 1989).

imprecise to adequately allege the existence of an associated-in-fact enterprise. Plaintiffs generally allege:

> At all times relevant hereto, each Defendant was and is employed by, or associated with, the enterprise. As such, each Defendant engaged in and/or exerted control over a continuing pattern racketeering activities which affected interstate or foreign commerce, and conducted or participated directly or indirectly in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection or unlawful debts as discussed more fully herein.

(FACC ¶189).

### a. Common Purpose

Plaintiffs set forth numerous allegations of Defendants' alleged common purpose of the associated-in-fact enterprise. (FACC ¶190-201). In broad brush, Plaintiffs allege that VeriSign, Jamster, T-Mobile, and AT&T acted "with the intentional and common purpose of increasing and facilitating the unauthorized and fraudulent sale of Jamster mobile content with the intended goal of increasing revenue" for Defendants. (FACC ¶190). Viewed in context, this, and related allegations, fail to particularly establish that the common purpose of the enterprise is to engage in a course of illegal conduct.

At a minimum, Plaintiffs must set forth particularized allegations that Wireless Providers and Content Provides had the common purpose of increasing their revenues by fraudulent means. The hallmark of an enterprise is an association of entities, groups or individuals that "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d. Cir. 2004); Odom, 486 F.3d at 552. Plaintiffs argue that Content Providers engaged in fraudulent advertising and agreed with Wireless Providers "to bill mobile service customers for services and content which they had not authorized and/or requested. . . . [and] colluded with Wireless Providers to share revenues that were collected as part of the enterprise." (Opposition to Motion to Dismiss RICO Claim at p.7:5-10). Plaintiffs repeat the same allegations in different ways. For example, Plaintiffs allege that Content Providers entered into agreements with Wireless Providers "to bill for the unauthorized Jamster chargers," (FACC ¶32)," and "to further the common purpose of fraudulently collecting monies from customers." (Id. at ¶194).

Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such

1    as "unauthorized charges" or "fraudulently collecting monies" in an attempt to show a common
2    purpose.  For example, the same allegations set forth above without the adjectives read, in effect, that
3    Defendants agreed "to bill for [] Jamster charges," (FACC ¶32), and "to further the common purpose
4    of [] collecting monies from customers." (FACC ¶194).  Without the adjectives, the allegations allege
5    conduct consistent with ordinary business conduct and an ordinary business purpose.  The challenge
6    for Plaintiffs is to set forth sufficient allegations to distinguish ordinary business conduct from
7    fraudulent conduct.  Pleading by adjective does not comply with Rule 9(b).  Even in the more lenient
8    pleading context of Rule 8(a)(2), legal conclusions like those alleged by Plaintiffs must be supported
9    by "well-pleaded factual allegations."  Ashcroft, 2009 WL 1361536 *13.  Under the particularized
10   pleading requirements of Rule 9(b), Plaintiffs conclusory allegations are woefully inadequate to state
11   a claim for relief.

12       Plaintiffs argue that the RICO allegations are analogous to the common purpose allegations
13   of Odom.  486 F.3d 541.  In Odom, the plaintiff alleged that Microsoft and Best Buy had the common
14   purpose of increasing the number of people using Microsoft's Internet Service by fraudulent means.
15   To show the wrongful common purpose of the enterprise, plaintiff set forth the fraudulent means to
16   carry out the scheme. Plaintiff alleged that Microsoft invested $200 million in Best Buy and, as a part
17   of the agreement, agreed to promote Best Buy's online store through its MSN service.  Best Buy, in
18   return, agreed to promote the MSN service and other Microsoft products in both its stores and
19   advertising.  Id. at 543.  Best Buy furthered the common purpose by distributing Microsoft Internet
20   Trial CD's and conveying its customers' debit and credit card information to Microsoft.  Microsoft
21   then allegedly used this information to activate customer accounts for its Internet service even though
22   the customer did not need or desire the service. If a customer inquired about the Trial CD scanned by
23   the Best Buy employee, the employee would misleadingly claim that it was done for the purpose of
24   inventory control when, in reality, the scanning of the CD would allegedly transfer the customer's
25   name and credit card information to Microsoft.  After expiration of the  free trial period, Microsoft
26   would then start billing the customer for an Internet service not provided, requested, nor desired by
27   the customer. The Ninth Circuit concluded that these allegations demonstrated that "Microsoft and
28   Best Buy had a common purpose of increasing the number of people using Microsoft's Internet service

1 through fraudulent means." Id. at 552.

2     Here, unlike Odom, Plaintiffs fall short of providing the particularized allegations required by Rule 9(b) and Odom. The plaintiff in Odom alleged particularized facts supporting the inference that the parties had a common purpose to engage in a fraudulent scheme. Plaintiffs herein allege an overarching common purpose to engage in fraudulent conduct, but fail to identify specific allegations in support of the common purpose. Plaintiff's repeatedly allege that VeriSign and Jamster engaged in materially false and misleading advertising in soliciting customers for its services. (FACC ¶¶191, 192, 193). Wireless Providers, in turn, allegedly acted in concert with Content Providers by providing telephone numbers which could be used "much like a credit card" to bill Plaintiffs. (FACC ¶¶194, 195). Whereas the plaintiffs in Odom set forth allegations of a quid pro quo to establish the requisite common purpose, there are no such allegations here.

12     Plaintiffs further describe the scheme as follows: "Content Providers would advertise the services which would lead to fraudulent charges, and the Wireless Providers would actually bill and collect the payments from customers, keep a portion for themselves as payment for their part in the fraudulent enterprise and pay the remainder to the Content Providers. See FACC; see also ¶¶72-119; Ex . A, Mosher Decl. ¶¶ 5, 8-9." (Oppo. at p.7:18 22). These conclusory allegations are woefully inadequate to state a claim. See Ashcroft, 2009 WL 1361536. Unlike Odom, where the common purpose was established by allegations demonstrating that Best Buy and Microsoft actively worked together in an indispensable and integrated manner to mutually engage in wrongful acts, the FACC fails to establish that Wireless Providers and Content Providers acted with a common purpose to accomplish the alleged fraudulent scheme. The court concludes that the allegations fail to particularly establish that Wireless Providers and Content Provides had the common purpose of increasing their revenues by fraudulent means.

24     Further, the court notes that Plaintiffs fail to allege that AT&T created, sponsored, approved, or otherwise adopted the alleged deceptive advertising issued by Content Providers. The parties in Odom not only allegedly concocted the scheme but each party did its part to ensure the success of the fraudulent scheme. The success of the scheme to increase the number of Microsoft Internet users depended on the active and knowing participation of both parties. Here, in contrast, the FACC alleges

1  that Content Providers engaged in false advertising and Wireless Providers engaged in alleged false
2  billing practices. There are no allegations that the success of one depended on the success of the
3  other. Plaintiffs fail to link or attribute the success of the alleged scheme to a common purpose – as
4  pled, no common purpose is required to successfully carry out the alleged fraud. Plaintiffs must do
5  more than allege that Content Providers engaged in false advertising and Wireless Providers engaged
6  in misleading billing practices to reach the conclusion that the parties had the common purpose to
7  increase their revenues by fraudulent means.[3]

8  In sum, the court dismisses the RICO claim in its entirety as to all Defendants, without leave
9  to amend.[4]

10  **2.   AT&T's Motion to Strike Class Allegations and Compel Arbitration**

11  AT&T, joined by T-Mobile, moves to strike the nationwide class allegations asserted in the
12  FACC on the ground that putative class members from states that enforce class action waivers
13  contained in arbitration agreements are not proper parties in this class action pursuant to Federal Rule
14  of Civil Procedure 23. In large part, the motion identifies substantial hurdles confronting Plaintiffs
15  in maintaining a nationwide class action under Rule 23.

16  Even though the arguments of AT&T may ultimately prove persuasive, the court declines to
17  address issues of class certification at the present time. Piece-meal resolution of issues related to the
18  prerequisites for maintaining a class action do not serve the best interests of the court or parties.
19  However, mindful of this court's obligation to resolve class certification issues "[a]t an early
20  practicable time," Fed.R.Civ.P. 23(c)(1)(A), the court sets the following briefing schedule on
21  Plaintiffs' motion for class certification: Plaintiffs shall file and serve their motion for class
22  certification by August 31, 2009, Defendants' oppositions shall be filed by September 30, 2009, and
23  Plaintiffs' reply shall be filed by October 16, 2009. The motion is calendared for oral argument on

---

[3] Defendants also argue that Plaintiffs fails to adequately allege a pattern of racketeering activity, a conspiracy under Section 1962(d), or to adequately plead a RICO injury. While Defendants arguments may have some merit, the court declines to reach these issues until Plaintiffs are able to establish a viable RICO enterprise.

[4] In light of this court's December 9, 2008 order granting the motion to dismiss the RICO cause of action in the CCAC wherein the court set forth a roadmap identifying the required elements to establish a RICO claim, the court grants the present motion without leave to amend. In the event discovery or other circumstances provide a basis for a RICO claim, nothing in this order prevents Plaintiffs from timely seeking to amend the complaint to add a RICO claim.

1  November 5, 2009 at 3:00 p.m.[5]

### 3. AT&T's Motion to Strike and to Dismiss

#### A. The Fraud and Misrepresentation Claims

AT&T argues that the fraud-based claims must be dismissed because "Plaintiffs neglect to allege any specifics regarding the billing statements they now challenge as fraudulent." (Motion at p.21:6-7). In its December 9, 2008 order the court denied Wireless Providers's motion to dismiss the misrepresentation claims based upon the alleged misleading billing claims.[6] The court declines to revisit this issue until after the pleadings are closed.

#### B. The Billing Presentation Claims

AT&T contends that this court's December 9, 2008 order dismissing the California Public Utilities Code §2890 claim requires dismissal of all billing presentation claims. This argument is not persuasive. While the CPUC may regulate utilities in California, such utilities are also subject to federal regulations, See 47 U.S.C. §§206, 207, and AT&T cannot argue that state law preempts federal law. Further, AT&T fails to cite any authority that the Public Utilities Code precludes state law claims brought pursuant to California's Unfair Competition law or Cal. Bus. & Prof. §§17200 and 17500. As noted in People ex rel Orloff v. Pacific Bell, 31 Cal.4th 1132, 1138 (2003), "the PUC does not have exclusive jurisdiction of all actions against a public utility, and that the mere possibility of, or potential for, conflict with the PUC is, in general, insufficient in itself to establish that a civil action against a public utility is precluded by section 1759."

In sum, the court denies this potion of AT&T's motion to dismiss.

#### C. The UCL, FAL and CLRA Claims

AT&T generally argues that it cannot be held liable for the alleged deceptive marketing practices of Content Providers. The FACC repeatedly alleges that Content Providers, and not the Wireless Providers, issued the allegedly false and misleading advertisements. (FACC ¶¶ 250, 252, 264, 272, 281, and 284). It is well established that the "concept of vicarious liability has no

---

[5] By setting this briefing schedule the court anticipates completion of class-related discovery prior to resolution of the motion for class certification.

[6] The court also denied Content Provider's motion to dismiss the misrepresenation claims.

1 application to actions brought under the unfair business practices act." Emery v. Visa International
2 Service Ass'n, 95 Cal.App.4th 952, 960 (2002) (quoting People v. Toomey, 157 Cal.App.3d 1. 14
3 (1984)). As explained in Emery, "[a] defendant's liability must be based on his personal 'participation
4 in the unlawful practices' and 'unbridled control' over the practices that are found to violate section
5 17200 or 17500." Id. (quoting Toomey, 157 Cal.App. 3d at 15).

6 Plaintiffs respond that "T-Mobile and AT&T were certainly on notice that Jamster was
7 engaging in false advertising. The FACC pleads that they had received complaints from Attorneys
8 General in various states and that Plaintiffs contacted T-Mobile and AT&T to question what the
9 charges were that were appearing on their bill." (Oppo. to T-Mobile's Motion at p. 6: 5-8). The
10 allegations cited in support of this argument provide that Plaintiff Cervantes, on March 10, 2005,
11 requested that AT&T terminate all text, messages, and downloading services. (FACC ¶97). Further,
12 Plaintiffs allege that a consumer wrote to AT&T on January 31, 2005 complaining about Jamster's
13 wrongful billing practices and that various state agencies sent seven letters to Jamster or VeriSign
14 between March 14, 2005 and June 25, 2005 advising these entities of investigations and or complaints
15 concerning their advertising, (FACC ¶121), and that T-Mobile worked with Jamster since 2003 to bill
16 for Jamster's subscription charges and that "T-Mobile knew of complaints concerning deceptive
17 advertising undertaken by Jamster in United Kingdom, yet T-Mobile continued to bill for Jamster
18 subscription charges and even expanded that billing to the Untied States." (FACC ¶215(g). These
19 allegations, the court concludes, are insufficient to demonstrate that Wireless Provides participated
20 or exercised unbridled control over Content Providers alleged false advertising. To allege, in
21 conclusory fashion without adequate particularity, that T-Mobile knew of complaints concerning
22 deceptive marketing is insufficient to show that Wireless Providers controlled, participated, approved,
23 marketed or otherwise adopted Content Providers' advertising practices. Consequently, the court
24 grants the motion to dismiss the §17200 and 17500 claims against Wireless Providers to the extent
25 those claims are based upon the alleged false advertising of Content Providers.

26 With respect to the seventh cause of action for alleged violation of the California Consumers
27 Legal Remedies Act and eighth cause of action for alleged violation of California's false advertising
28 laws, the court concludes that Wireless Providers cannot be held liable for Content Providers alleged

1  misleading advertising. See Perfect 10 v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 808 (9th Cir. 2007).
2  Civil Code Section 1770 generally provides that any consumer who suffers damages as a result of the
3  use or employment of unlawful practices may recover damages. Meyer v. Sprint Spectrum L.P., 45
4  Cal.4th 634, 639-40 (2009). Absent allegations of participation or control in the alleged unlawful
5  advertising scheme by Wireless Providers, these Defendants cannot be held vicariously liable for the
6  acts of third parties like Content Providers. Plaintiffs fail to identify any authority permitting a CLRA
7  claim to be maintained under a secondary liability theory. Consequently, the court grants the motion
8  to dismiss the CLRA and FAL claims to the extent those claims are anchored to allegations related
9  to Content Provider's false advertising.

10  The court also dismisses the false advertising claim based upon Wireless Providers allegedly
11  false billing statements. An actionable statement under FAL requires that a statement must be (1)
12  widely disseminated to the public and (2) for the purpose of influencing consumers to purchases goods
13  or services. Cal. Bus. Prof. Code §17500. Here, the billing statements to individual customers do not
14  satisfy the public statement element. Furthermore, Plaintiffs fail to directly address this issue. The
15  motion to dismiss the false advertising claims against Wireless Providers in granted.

**4.  T-Mobile's Motion to Dismiss**

As an initial matter, the court notes that certain arguments raised by T-Mobile have already been addressed in the context of AT&T's motion and will not be separately addressed herein as the legal principals apply equally to T-Mobile.

A.  Conclusory, Immaterial and Contradicted Allegations

T-Mobile makes general and specific challenges to the FACC. The first general challenge argues that some of the FACC's allegations are conclusory and lump together all "Defendants" rather than setting forth more particularized allegations. While this argument has merit with respect to some overly broad allegations, the court notes, consistent with the limited role played by pleadings in federal court, that the FACC has been substantially narrowed in light of the present order. The FACC, as limited by the present order, adequately apprises all Defendants of the nature of the claims asserted against them such that they are able to prepare an adequate defense, conduct discovery, and prepare for trial.

In its second general challenge to the FACC, T-Mobile argues that many of the allegations asserted against it are not representative of T-Mobile plaintiffs Ford and Fox de Stefano. In a related argument T-Mobile contends that the court should strike the class definition because it purports to include T-Mobile customers who are contractually compelled to arbitrate their claims. The court declines to reach these arguments on the present motion. Whether the claims of plaintiffs Fox and de Stefano are typical or representative of the class they seek to represent are issues the court will address in the context of class certification. Similarly whether to strike the class definition under Rule 12(f) because it includes customers who must arbitrate their claims is similarly an issue to be addressed at the time of class certification.

Finally, T-Mobile argues that its monthly billing statements are not misleading as a matter of law and submits the billing statements of plaintiffs Ford and Fox de Stefano for the purpose of demonstrating that the billing statements "contain detailed information, contrary to the mischaracterizations in the FACC." (Motion at p.15:15). The court declines to consider this evidence on the present motion. It is generally inappropriate to determine factual matters on a motion to dismiss, especially where the court is called upon to weigh the evidence. Levine, 950 F.2d at 1482. The court declines to weigh the evidence on the present motion.

### B. Causation and Standing

T-Mobile argues that each claim asserted against it has both a standing and causation requirement. (Motion at pp. 17:2 - 20:1). According to T-Mobile, the FACC fails to allege that plaintiffs Ford and Fox de Stefano ever complained that the bills were misleading or "believed that they were paying for something else." (Motion at p.19:13). This argument is not persuasive. Construing the FACC and all reasonable inferences in favor of Plaintiffs, Concha, 62 F.3d at 1500, the court concludes that the FACC adequately advises T-Mobile that plaintiffs Ford and Fox de Stefano have suffered injury caused by the false advertising of Content Providers and by the inclusion of those charges in the monthly statements provided by T-Mobile. (FACC ¶¶73-78; 152-157. At the pleading stage, T-Mobile is provided adequate notice of the nature of the claims such that it can prepare an answer, conduct relevant discovery, and prepare for trial.

///

### C.  The Billing Claims As Time Barred

T-Mobile contends that Plaintiffs' claims related to the allegedly false and misleading billing statements are time barred because they were not alleged until July 1, 2008. The T-Mobile service agreement provides: "Except to the extent prohibited by law, all claims must be brought within 2 years of the date the claim arises." (Baca Decl., Exh. C, ¶14). As the complained of conduct occurred in January and February 2005, T-Mobile concludes that the filing of the CCAC on July 1, 2008 comes too late. This argument is not persuasive for two reasons.

First, Ford's First Amended Complaint, filed on July 29, 2005, alleged a violation of the Truth-In-Billing Act, (Docket No. 31, ¶104), thereby placing T-Mobile on notice that Plaintiffs challenged the adequacy of the monthly billing statements. Second, and more importantly, the court granted T-Mobile's motion to stay the present action on March 8, 2006 and the stay continued in effect until about May 30, 2008. As the stay preserved the status quo pending resolution of the appeal, see Azurin v. Von Raab, 792 F.2d 914 (9th Cir. 1986), the potential claims of Plaintiffs were tolled during this period of time.

**CONCLUSION**

In sum, the court grants in part and denies in part the following motions:

- The motion to dismiss the RICO claim against all Defendants is granted;
- AT&T's motion to strike class allegations and compel arbitration is denied as prematurely filed and the court defers ruling on the motion until the class certification hearing date;
- Wireless Providers' motion to dismiss the UCL, FAL, and CLRA claims is granted with respect to the alleged deceptive marketing claims;
- Wireless Providers' motion to dismiss the FAL claim is granted with respect to the alleged false billing claim; and
- T-Mobile's motion to dismiss is denied.

///
///
///

       The court also grants all motions without leave to amend and requires all Defendants to file answers within 15 days of entry of this order.

**IT IS SO ORDERED.**

DATED:  May 22, 2009

                                              Hon. Jeffrey T. Miller
                                              United States District Judge

cc:       All parties